**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-063**

**Filing Date: May 31, 2017**

**Docket No. A-1-CA-34867**

**WILLIAM SHAWN CATES and
BOBBY CHERESPOSY, on behalf of
themselves and all others similarly situated,**

      **Plaintiffs-Appellants,**

**v.**

**MOSHER ENTERPRISES, INC.,**

      **Defendant-Appellee/Third-Party Plaintiff,**

**v.**

**FLINTCO WEST, INC.,**

      **Third-Party Defendant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nan G. Nash, District Judge**

Youtz & Valdez, P.C.
Shane C. Youtz
Stephen Curtice
James A. Montalbano
Albuquerque, NM

for Appellants

Bingham, Hurst & Apodaca, P.C.
Wayne E. Bingham
Albuquerque, NM

for Appellee

**OPINION**

1

**SUTIN, Judge.**

**{1}** Plaintiffs William Shawn Cates and Bobby Cheresposy, on behalf of themselves and all others similarly situated, appeal, contending that the district court erred in determining that it did not have jurisdiction to entertain their private action under the Public Works Minimum Wage Act (the Act), NMSA 1978, §§ 13-4-10 to -17 (1937, as amended through 2011). Plaintiffs sought to recover from Defendant Mosher Enterprises, Inc. wages for 2009 work that they allege were incorrectly based on the 2008 prevailing wage determined by the Department of Workforce Solutions (the Department). The district court determined that the Act did not confer a private right of action and dismissed Plaintiffs' action for lack of jurisdiction, without prejudice, so that Plaintiffs could pursue their administrative remedies. We hold that the Legislature intended to create a private right of action under the Act.

## BACKGROUND

**{2}** Plaintiffs sued, alleging that they and others similarly situated were not compensated the appropriate wage rate for all hours worked on a renovation project for the University of New Mexico. A class was certified, and each party filed a motion for summary judgment as to liability. During the hearing on the parties' motions for summary judgment, the district court raised sua sponte the question of whether the Act provided for a private right of action. Plaintiffs argued that "the intent of the [L]egislature was to make [a] provision for a private right of action." Plaintiffs referenced a ruling from a different district court judge determining that there was a private right of action under the Act and represented that "[i]t is one of those legal issues . . . that parties to these cases don't litigate anymore." Plaintiffs explained that it was "generally accepted that there is a private right of action."

**{3}** Following the hearing, the district court issued a letter to counsel expressing concern about whether the Act permits a private action for damages without first exhausting administrative remedies. And the court invited supplemental briefing on the question. After supplemental briefing, the court determined that, unlike the New Mexico Minimum Wage Act, the Act does not confer a private right of action. The court reasoned that the "[Act] contemplates an administrative procedure and directs the Director to make the initial determination of [the Act] violations and the subsequent reference for appropriate legal action. The [Act] provides an appeal process of the Director's decision, first to the Labor and Industrial Commission and then to the District Court." (Citations omitted.) The court dismissed the case without prejudice to allow Plaintiffs the opportunity to pursue their administrative remedies before bringing the case before the district court. This appeal followed.

## DISCUSSION

**{4}** At the heart of the controversy are statutory provisions that, with apologies for the length of the quoted material, we fully set out here. Section 13-4-14 reads:

2

A.     The director shall certify to the contracting agency the names of persons or firms the director has found to have disregarded their obligations to employees under the . . . Act and the amount of arrears. The contracting agency shall pay or cause to be paid to the affected laborers and mechanics, from any accrued payments withheld under the terms of the contract or designated for the project, any wages or fringe benefits found due to the workers pursuant to the . . . Act. The director shall, after notice to the affected persons, distribute a list to all departments of the state giving the names of persons or firms the director has found to have willfully violated the . . . Act. No contract or project shall be awarded to the persons or firms appearing on this list or to any firm, corporation, partnership or association in which the persons or firms have an interest until three years have elapsed from the date of publication of the list containing the names of the persons or firms. A person to be included on the list to be distributed may appeal the finding of the director as provided in the . . . Act.

B.     If the accrued payments withheld under the terms of the contract, as mentioned in Subsection A of this section, are insufficient to reimburse all the laborers and mechanics with respect to whom there has been a failure to pay the wages or fringe benefits required pursuant to the . . . Act, the laborers and mechanics shall have the right of action or intervention or both against the contractor or person acting as a contractor and the contractor's or person's sureties, conferred by law upon the persons furnishing labor and materials, and, in such proceeding, it shall be no defense that the laborers and mechanics accepted or agreed to less than the required rate of wages or voluntarily made refunds. The director shall refer such matters to the district attorney in the appropriate county, and it is the duty and responsibility of the district attorney to bring civil suit for wages and fringe benefits due and liquidated damages provided for in Subsection C of this section.

C.     In the event of any violation of the . . . Act or implementing rules, the contractor, subcontractor, employer or a person acting as a contractor responsible for the violation shall be liable to any affected employee for the employee's unpaid wages or fringe benefits. In addition, the contractor, subcontractor, employer or person acting as a contractor shall be liable to any affected employee for liquidated damages beginning with the first day of covered employment in the sum of one hundred dollars ($100) for each calendar day on which a contractor, subcontractor, employer or person acting as a contractor has willfully required or permitted an individual laborer or mechanic to work in violation of the provisions of the . . . Act.

D.     In an action brought pursuant to Subsection C of this section, the court may award, in addition to all other remedies, attorney fees and costs

to an employee adversely affected by a violation of the . . . Act by a contractor, subcontractor, employer or person acting as a contractor.

(Citation omitted.) We note Plaintiffs' care to highlight Subsections (A) and (B) of Section 13-4-14 are comparable to sections of the federal Davis-Bacon Act (Davis-Bacon), 40 U.S.C. § 3144 (2013), which read as follows:

(a)     Payment of wages.--

(1)     In general.--The Secretary of Labor shall pay directly to laborers and mechanics from any accrued payments withheld under the terms of a contract any wages found to be due laborers and mechanics under this subchapter.

(2)     Right of action.--If the accrued payments withheld under the terms of the contract are insufficient to reimburse all the laborers and mechanics who have not been paid the wages required under this subchapter, the laborers and mechanics have the same right to bring a civil action and intervene against the contractor and the contractor's sureties as is conferred by law on persons furnishing labor or materials. In those proceedings it is not a defense that the laborers and mechanics accepted or agreed to accept less than the required rate of wages or voluntarily made refunds.

(b)     List of contractors violating contracts.--

(1)     In general.--The Comptroller General shall distribute to all departments of the Federal Government a list of the names of persons whom the Comptroller General has found to have disregarded their obligations to employees and subcontractors.

(2)     Restriction on awarding contracts.--No contract shall be awarded to persons appearing on the list or to any firm, corporation, partnership, or association in which the persons have an interest until three years have elapsed from the date of publication of the list.

Our Supreme Court has similarly noted the parallels between Subsections (A) and (B) of the Act and the Davis-Bacon legislation. *See Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 2000-NMSC-030, ¶ 26, 129 N.M. 677, 12 P.3d 431. Subsections (C) and (D) of the Act, however, have no Davis-Bacon counterpart. Federal cases split on whether a private right of action exists under Davis-Bacon, with the majority holding against a private right of action. *Compare Operating Eng'rs Health & Welfare Tr. Fund v. JWJ Contracting Co.*, 135 F.3d 671, 676 (9th Cir. 1998) (recognizing that Davis-Bacon "does not create a private cause of action for employees"), *with McDaniel v. Univ. of Chicago*, 548 F.2d 689, 695 (7th Cir.

1977) ("In sum, we hold that implying a private right of action in the Davis-Bacon Act is necessary to effectuate the intention of Congress in passing the statute.").

**{5}** On appeal, Plaintiffs argue that: (1) the Act, unlike Davis-Bacon, "clearly contemplates" a private right of action, as evidenced by the fact that the Act includes language making violators liable to employees and allowing employees to recover attorney fees; (2) employees are not required to exhaust administrative remedies prior to pursuing a private right of action; and (3) the district court erred in concluding that it lacked jurisdiction to hear this case. Because we hold that there is a private right of action that is separate and distinct from any administrative remedies in the Act, we need not and do not address Plaintiffs' second and third arguments regarding exhaustion of administrative remedies and jurisdiction, which would only be relevant if Plaintiffs' access to the district court were somehow contingent on an administrative process.

**{6}** Plaintiffs acknowledge that many courts have concluded there is no private right of action under Davis-Bacon, but they rely on our Legislature's departure from Davis-Bacon in enacting Subsections (C) and (D) of the Act. Plaintiffs contend that these subsections reflect an intent to create a private right of action that is different from the remedial scheme in federal law.

**{7}** In addition to their position that a private right of action is expressly provided for in the statute, Plaintiffs turn to factors in *Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012, ¶ 31, 346 P.3d 1136, that are used to evaluate whether to imply a private right of action. These factors are:

> (1) Was the statute enacted for the special benefit of a class of which the plaintiff is a member? (2) Is there any indication of legislative intent, explicit or implicit, to create or deny a private remedy? and (3) Would a private remedy either frustrate or assist the underlying purpose of the legislative scheme?

(Alteration, internal quotation marks, and citation omitted.) These factors stem from *Cort v. Ash*, 422 U.S. 66, 78 (1975), and we will refer to them as the *Cort* factors.

**{8}** Plaintiffs assert that there can be no dispute that they were members of a class for whose "special benefit" the statute was enacted. And they assert that under the remaining two *Cort* factors, the Legislature, in Subsection (D), expressly allowed a court to award attorney fees and costs to an employee adversely affected in an action under Subsection (C), and also, Subsection (C) provides that a contractor "shall be liable to any affected employee[.]" *See* § 13-4-14(C), (D). Plaintiffs indicate that, in an administrative process handled by the administrative agency, the employee would have no right to recover attorney fees and that reading the Act so as not to allow for a private right of action would render Subsection (D) superfluous.

5

**{9}**     Defendant argues that no private right of action exists, because the Act "does not expressly allow a private right" of action and because "there is no basis to imply a private right of action where the Legislature intended the only remedies to come through the administrative process." Defendant notes that the Act was modeled after Davis-Bacon and lists federal cases holding that Davis-Bacon does not provide a private right of action. *See, e.g.*, *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 85 (2d Cir. 2003) (recognizing that Davis-Bacon does not provide an aggrieved employee with a private right of action for unpaid wages and stating that "the great weight of authority indicates that it does not" confer such a right for back wages); *JWJ Contracting Co.*, 135 F.3d at 676 (same); *United States ex rel. Glynn v. Capeletti Bros., Inc.*, 621 F.2d 1309, 1313-14 (5th Cir. 1980) (same); *see also Tatsch Constr., Inc.*, 2000-NMSC-030, ¶ 26 (stating that the Act is modeled after Davis-Bacon). According to Defendant, employees making claims pursuant to the Act, like Davis-Bacon claimants, must follow the administrative process provided by the Act and not attempt to circumvent the Act based on provisions they do not like.

**{10}**     According to Defendant, Plaintiffs' argument regarding Section 13-4-14(D) that because an employee would not have attorney fees if there were no private right of action, therefore they may file suit under Section 13-4-14(C), is "illogical." Defendant's point, to the contrary, is that a party can incur attorney fees pursuing administrative remedies as easily as it can by filing a lawsuit. Moreover, Defendant argues, while fee provisions in statutes have led some courts to infer a private right of action, others have held that it is a sign that no remedy exists outside of administrative relief, citing for support *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1099 (9th Cir. 2005), which states, "At best, the absence of any private right of action language . . .  and the presence of the fee provision render the [National Historic Preservation Act] ambiguous on the cause of action point. Without explicit language, such an ambiguity can hardly be converted into an implied right of action."

**{11}**     In analyzing and responding to Plaintiffs' argument that a private right of action may be implied under the *Cort* factors, Defendant assumes, for purposes of this appeal, only that Plaintiffs come within the first *Cort* factor. But Defendant asserts that "this is not determinative, as the Legislature has many different ways to protect classes of people aside from giving them private enforcement rights[,]" citing *Capeletti Bros.*, 621 F.2d at 1313, as "[r]ecognizing that Congress intended [Davis-Bacon] to benefit laborers and mechanics, however, [Davis-Bacon] does not establish that Congress intended additionally that [it] would be enforced through private litigation."

**{12}**     Defendant asserts that the second *Cort* factor "definitively speaks against an implied right of action, because the Legislature has already refused to add one." Defendant explains that in 2005, Senate Bill 634 was introduced, proposing amendments to Section 13-4-14[1] that

---

[1]Although Defendant states that the relevant amendment was made to Section 13-4-11, the at-issue amendment was to Section 13-4-14. We correct this error as needed

included a new Subsection (D), which read: "In addition to all other remedies, an employee adversely affected by a violation of the . . . Act by a contractor, subcontractor, employee or a person acting as a contractor *shall have a private right of action* for damages, attorney fees and reasonable costs." (Emphasis added.) However, a Senate committee struck the language that would have conferred a private right of action, and the bill passed without that language. According to Defendant, "Senate Bill 634 shows that in this context, as in others, the Legislature will provide an express damages remedy if it wants to[,]" citing the New Mexico Minimum Wage Act that specifies a private right of action for its violation. *See* NMSA 1978, § 50-4-26(D) (2013). Defendant concludes that the committee's explicit rejection of a private right of action "should conclude the inquiry into its intended scope." In a supplement to its answer brief, Defendant also directed this Court to House Bill 335, 53rd Leg., 1st Sess. (N.M. 2017), which again sought to amend Section 13-4-14(D) to include the phrase "private right of action[.]" According to Defendant, "The proposed amendments to the [Act] contained in HB 335 once again establish that the [Act] applicable to the instant appeal contains no private right of action." The phrase "private right of action" was once again removed in House Judiciary Committee Substitute for House Bill 335, 53rd Leg., 1st Sess. (N.M. 2017), and was never voted on by the Legislature.

**{13}**     Turning to the third *Cort* factor, Defendant asserts that "the underlying purpose of the legislative scheme indicates that the Legislature did not intend to allow workers to bring suit." Defendant argues that the Act "carefully balances the interests of contractors and their employees"; that the contractor "is able to work approximate labor costs into its bid, while the worker enjoys the government's help in collecting the prevailing wage"; and that to imply "a private right of action to sue for [Act] wages would destroy this careful balance." Defendant similarly makes this "balance" argument in the form of a due process claim. According to Defendant, the process by which the Department investigates claims prudently balances the rights of workers and contractors, and to allow Plaintiffs to skip this measured practice or to create a private right of action where none exists, would deny Defendant the due process it is afforded in the determination and appeal process.

**{14}**     We review interpretation of statutory provisions de novo. *Eisert v. Archdiocese of Santa Fe*, 2009-NMCA-042, ¶ 29, 146 N.M. 179, 207 P.3d 1156 ("Whether a private right of action can be implied from a statute is a question of law that we review de novo."); *see also Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69 ("Statutory interpretation is a question of law, which we review de novo.").

**{15}**     Because the Act lacks the clarity necessary for an express private right of action, we focus on the implication based on the *Cort* factors. *See Yedidag*, 2015-NMSC-012, ¶ 31 (stating that the "determination of whether to imply a private cause of action is influenced by [the *Cort*] factors"). The parties do not dispute that, for the purposes of this appeal, the Act was enacted for the purpose of benefitting Plaintiffs, as required under the first *Cort*

---

throughout this opinion.

factor; we therefore focus on the second and third *Cort* factors.

**{16}** The second *Cort* factor requires us to consider whether the Legislature intended to create or deny a remedy and calls upon traditional statutory construction tools requiring that we "look[] first to the plain language of the statute[.]" *State v. Almanzar*, 2014-NMSC-001, ¶ 14, 316 P.3d 183 (internal quotation marks and citation omitted).

**{17}** Here, we hold that the plain language of Section 13-4-14(C) and (D) evidences legislative intent to create a private right of action that is separate and distinct from the administrative scheme in Section 13-4-14(A) and (B). Subsection (C) states that an "employer . . . *shall be liable to any affected employee* for the employee's unpaid wages" and "*shall be liable to any affected employee* for liquidated damages[.]" Section 13-4-14(C) (emphasis added). Subsection (D) specifically points to "an action brought pursuant to Subsection C" and indicates that "the court may award . . . attorney fees and costs to an employee adversely affected[.]" Section 13-4-14(D). Plain language in these subsections contemplates a private right of action in which an employer can be liable to an employee for unpaid wages and attorney fees, separate from the administrative scheme contained in Subsections (A) and (B).

**{18}** Defendant's proffered interpretations of Subsection (D)—i.e., that an employee could incur attorney fees through the administrative process or that a district attorney pursuing a claim as required by Subsection (B) could recover attorney fees under Subsection (D)—are not persuasive.[2] The language of Subsection (D) specifically references an action brought pursuant to Subsection (C) and allows for an award of attorney fees to an employee. We are not convinced that a district attorney could collect attorney fees, given the statutory restrictions on their pay. *See* NMSA 1978, § 36-1-7 (1968) ("No district attorney shall receive to his own use any salary, fees or emoluments other than the salary and per diem and travel allowances prescribed by law."). We "read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350. We do not read any provision of a statute in a way that would render another provision of the statute "null or superfluous." *State v. Rivera*, 2004-NMSC-001, ¶ 18, 134 N.M. 768, 82 P.3d 939; *see also Katz v. N.M. Dep't of Human Servs.*, 1981-NMSC-012, ¶ 18, 95 N.M. 530, 624 P.2d 39 ("A statute must be construed so that no part of the statute is rendered surplusage or superfluous."). To read Subsection (D) as part of the administrative scheme contained in Subsections (A) and (B) would require us to ignore the express cross-reference to Subsection

---

[2]We also note that at oral argument defense counsel represented that, under the Act, the district attorney pursuing a wage claim as required by Subsection (B) does so as the private attorney of an employee. We see no basis for that statement. If, however, it were true, and the district attorney is not acting on behalf of the State or some other governmental entity, but rather as an employee's private attorney, it would further support the position that there is a private right of action under the Act.

8

(C). This could lead to an absurd result where attorney fees are permitted under the Act but not actually recoverable. We thus reject Defendant's proffered interpretations and hold that Section 13-4-14(D) contemplates a private right of action.

**{19}** We are also not persuaded by Defendant's argument that the history of Senate or House bills involving the inclusion or removal of the phrase "private right of action" provides evidence that the Legislature specifically intended to deny a private right of action. As noted in *Regents of University of New Mexico v. New Mexico Federation of Teachers*, 1998-NMSC-020, ¶ 30, 125 N.M. 401, 962 P.2d 1236, "[u]nlike some states, we have no state-sponsored system of recording the legislative history of particular enactments. [The appellate courts] do not attempt to divine what legislators read and heard and thought at the time they enacted a particular item of legislation. If the intentions of the Legislature cannot be determined from the actual language of a statute, then we resort to rules of statutory construction, not legislative history." Further, during oral argument in this matter, both parties provided equally plausible ways of interpreting the history of the proposed bills. To favor one interpretation over the other would require this Court to engage in exactly the type of speculation as to legislative intent that is disfavored.

**{20}** Finally, to the extent either party attempts to make an argument regarding the similarities or differences of the Act as compared to Davis-Bacon, we are unable to divine any meaning or application to the present case. The fact that Davis-Bacon is different from the Act is clear and undisputed.

**{21}** Because we reject Defendant's arguments as to legislative intent and because we hold that the plain language of Section 13-4-14(C) and (D) evidences legislative intent to create a private right of action under the Act, we hold that the second *Cort* factor favors Plaintiffs.

**{22}** The third *Cort* factor, which requires us to determine whether an implied cause of action furthers or frustrates the purpose of the Act, also favors Plaintiffs. In *Tatsch Construction, Inc.*, our Supreme Court held that the purpose behind the Act was remedial, that remedial statutes ought to be read broadly, and that the Act should be read "broadly so as to effectuate the intent of the [L]egislature." 2000-NMSC-030, ¶ 26. We hold that broadly interpreting the Act to imply a private right of action under Subsections (C) and (D) would further the remedial purpose of the Act, rather than frustrate it. Conversely, limiting employees to the administrative remedies under Subsections (A) and (B) would be overly narrow and would frustrate the broad remedial purpose of the Act. Although Defendant argues that the Act carefully balances the interests of contractors and their employees, that implying a private right of action would destroy this careful balance, and that destroying that balance has due process implications, Defendant provides no authoritative support for those positions. We decline to address unsupported and undeveloped arguments on appeal. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (holding that arguments unsupported by citations to authority will not be reviewed); *see also Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that included no explanation of the party's argument and no

facts that would allow the claim to be evaluated).

**{23}** Because the *Cort* factors all weigh in favor of Plaintiffs' assertion of a private right of action, we hold that there is an implied private right of action.

**CONCLUSION**

**{24}** We reverse the district court's dismissal of Plaintiffs' complaint and remand for proceedings consistent with this opinion.

**{25}** **IT IS SO ORDERED.**

                                     _____

                                     **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**MICHAEL E. VIGIL, Judge**